UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DOROTHY B. HUBBARD,

          Plaintiff,

v.                                        Case No.  5:04-cv-569-Oc-10GRJ

JO ANNE BARNHART, Commissioner of
Social Security,

          Defendant.

_____

**ORDER**

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 4), and both parties have filed briefs outlining their respective positions. (Docs. 15 & 16).  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g).

**I. PROCEDURAL HISTORY**

On September 9, 2002, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of August 9, 2002. (R. 44-46.)  Plaintiff's application was denied initially and upon reconsideration. (R. 28-29, 31-32.)   Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted Plaintiff's administrative hearing on June 17, 2004. (R. 236-57.)  The ALJ issued a decision unfavorable to Plaintiff on August 25, 2004.  (R. 12-19.)

Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 4-5.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her

---

[5] <u>Keeton v. Dep't Health and Human Servs.</u>, 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. **SUMMARY OF THE RECORD EVIDENCE**

At the time of the hearing, Plaintiff was forty (40) years old. (R. 239.) She graduated from high school (R. 239) and attended college for two terms. (R. 240.) Plaintiff has previous work experience as a shipping and data entry clerk. (R. 65.) Plaintiff contends that she has been unable to work since August 9, 2002 due to symptoms related to hepatitis C, nephritis, myalgias, kidney disease and arthritis. (R. 52.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff suffered from fibromyalgia and hepatitis C. (R. 14.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (Id.)

---

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

The ALJ then found that Plaintiff retained the RFC to at least lift and carry up to 10 to 15 pounds occasionally, stand or walk up to two hours per eight-hour workday, sit up to six hours per eight-hour workday, push or pull without restrictions, and limited her to no significant stooping or crouching. (R. 16.)  In his RFC analysis, the ALJ discounted both the opinion of Dr. Patricia Jones and Plaintiff's testimony.  (R. 15-16.)  After finding that Plaintiff could not perform the requirements of her past relevant work, the ALJ applied Sections 201.28 and 201.29 of the Medical-Vocational Guidelines (the "grids")[22] and found that Plaintiff was not disabled. (R. 17.)

From December 2001 through August 2003, Plaintiff was treated by Patricia Jones, M.D.  (R. 131-63, 211-20.)  On December 5, 2001, Plaintiff complained of swelling in both hands and in her feet for the past three months and that she was awakening at night with pain in her hips and knees.  (R. 148.)  Dr. Jones noted that Plaintiff had been diagnosed with hepatitis C in October 1999 and that she had a right partial nephrectomy[23] for chronic nephritis in 1980. (*Id.*)  On examination, Dr. Jones noted "quite a bit of synovitis[24] throughout all the joints of both hands", that her hands "are very swollen and somewhat boggy", that "she has decreased grip strength" and that she has many myalgia trigger points throughout." (R. 149.)  On January 2, 2002, Plaintiff still complained of swollen hands and feet and Dr. Jones' diagnosis included rheumatoid arthritis in both hands. (R. 146-47.)  On June 6, 2002, Dr. Jones noted

---

[22] 20 CFR Pt. 404, Subpt. P. App.2 Rule 204.00.

[23] The removal of a kidney by surgical means.  See 4-N Attorneys' Dictionary Of Medicine 1151.

[24] The inflammation of a synovial membrane (which is the lining of a joint)..  See 3-L Attorneys' Dictionary of Medicine 3002.

"many myalgia trigger points", that Plaintiff was being treated by Dr. Lafferty for fibromyalgia and that she was starting to get depressed. (R. 145.)  Dr. Jones encouraged Plaintiff to apply for disability and completed a "Physician or Practitioner Certification" in which she noted that Plaintiff's hepatitis C, polyarthalgias, and myalgias prevent her from being able to perform work of any kind.  (R. 142.)   On July 17, 2002 and August 14, 2002, Dr. Jones noted chronic back pain, hip and hand pain and swelling.  (R. 136-41.)  On November 21, 2002, Dr. Jones noted that Plaintiff had left arm pain that was radiating up her neck and down her legs. (R. 134.)  On January 2, 2003, Dr. Jones noted that Plaintiff had left sided paresthesia.[25]  (R. 219.)  The records reflect treatment with various medications including Lortab, Flexiril, Norflux, Ultram, Bextra, Ultracet, MS Contin, Neurontin, Biaxin, Profen and Lorazepam.  (R. 131-33, 135-38, 140-41, 145, 213, 216, 219.)

     Plaintiff was seen by W. Bruce Yancey, Jr., M.D. of the Arthritis and Osteoporosis Center in October and November 2002 and in February and April 2003. (R. 164-67, 207-10.)  On October 3, 2002, Plaintiff reported "marked nonrestorative sleep," loud snoring with apnea episodes, soft tissue swelling of the hands and feet, fatigue, depression, weight gain, blurred vision, double vision, cramps in her calf muscles, occasional polyuria and decreased energy level.  (R. 166.)  On examination, Dr. Yancey noted a mildly tender abdomen, 14/18 myofascial tender points, generalized soft tissue swelling of hands and feet, excellent range of motion throughout the musculoskeletal systems, a normal Faber maneuver, negative supine and sitting

---

[25] Paresthesia refers to a sensation of tingling, burning etc.  See 1-B Attorneys' Dictionary of Medicine 3790.

straight leg raises, no lower extremity pitting edema, normal strength and no active or chronic synovitis. (Id.)  Dr. Yancey commented that Plaintiff "has multiple features suggesting primary sleep apnea and some of the fatigue, myalgias, and arthralgias could be related to such." (R. 167.)   On December 8, 2002, Dr. Yancey noted essentially normal results of a sleep study, bone density scan and brain MRI.  (R. 164.)  Plaintiff complained of diffuse symptoms including pain, fatigue and nonrestorative sleep and on examination, Dr. Yancey found "16/18 myofascial tender points" and generalized soft tissue swelling of the hands. (*Id.*)

On February 3, 2003, Dr. Yancey noted that Plaintiff was still symptomatic, with heightened stress, but sleeping better with Flexiril and that she had stopped taking Neurontin due to adverse side effects. (R. 209.)  Dr. Yancey still found 16/18 myofascial tender points and he commented that "[a]t this point, fibromyalgia is the main diagnosis from a rheumatologic perspective, although even with the normal hepatitis C by PCR, there still could be some potential hepatitis C leading to the fatigue and arthralgias as well." (R. 210.)  Dr. Yancey prescribed Lorazepam in addition to Flexiril to try to maximize her restorative sleep.  (*Id.*) On April 28, 2003, Dr. Yancey noted that Plaintiff "continues to have diffuse symptoms" including pain, fatigue, and nonrestorative sleep but that she was feeling better with the addition of Lorazepam.  (R. 207-08.)  On examination, Dr. Yancey found 13/18 myofascial tender points and he reiterated his primary diagnosis of fibromyalgia with a possible hepatitis C contributing component. (R. 208.)

Plaintiff was also treated by Jayaprakash Shetty, M.D., from December 2003 to May 2004.  (R. 225-35.)  While Dr. Shetty's records are very difficult to read, it is clear

that Plaintiff complained that her left side was tingling and that she was dizzy. (R. 227.) On February 18, 2004, Plaintiff saw Lance Kim, D.O. for a neurological consultation regarding episodic numbness and tingling paresthesia, and increasing dizziness. (R. 222.) Dr. Kim noted that Plaintiff had intact muscle strength throughout the body, no gross ataxia and unremarkable gait. (R. 223.) Based on his examination and a nerve conduction study and EMG and brain MRI, Dr. Kim concluded that Plaintiff's numbness and paresthesia was consistent with classic migraine with sensory aura and her chronic dizziness was most consistent with peripheral vestibular pathology. (Id.)

On February 4, 2003, Plaintiff underwent a consultative psychological evaluation with Rodney Poetter, Ph.D. (R. 182-84.) Plaintiff reported that she does all activities of daily living independently but gets help with shopping, cooking, laundry and housework. Dr. Poetter opined that her symptoms "are suggestive of Depressive Disorder NOS." (R. 184.)

There is a physical residual function capacity ("RFC") assessment of record which was performed by Nicholas Bancks, M.D., a non-examining state agency physician, on January 12, 2003. (R. 199-206.). Based on his review of the medical records, Bancks concluded that Plaintiff could occasionally lift/carry up to 20 pounds, frequently lift/carry up to 10 pounds, walk/stand and sit for about 6 hours in an 8-hour workday, unlimited pushing and/or pulling in the lower extremities, occasionally balance but never climb ladder/rope/scaffolds and avoid concentrated exposure to hazards. (R. 200-03.) Bancks noted that the severity or duration of Plaintiff's symptoms were disproportionate to the expected severity or duration on the basis of Plaintiff's medically determinable impairments. (R. 204.)

There is a Psychiatric Review Technique completed on February 10, 2003 by Gary W. Buffone, Ph.D., a non-examining state agency psychologist. (R. 185-98.) Buffone concluded that Plaintiff's depressive disorder was not severe and resulted in only mild limitations on Plaintiff's activities of daily living and social functioning. (R. 185, 195.)

The record also includes a "Vocational Evaluation" report dated March 10, 2003 from "Abilities of Florida" which was conducted at the request of Plaintiff's rehabilitation counselor. (R. 95-101.). During the physical capacities portion of the evaluation, Plaintiff was able to lift 25 pounds and continuously lift 15 pounds however she reported that during lifting she was only using her right arm; hand grip 30 pounds, however, Plaintiff reported that she only squeezed with her right hand; palm press 20 pounds; horizontal press 25 pounds; and vertical press 40 pounds. (R. 100.) In addition, Plaintiff was able to balance on both legs and walk forward and backward and heel to toe. (*Id.*)

At the June 17, 2004 hearing, Plaintiff described her symptoms as pain throughout her body, especially her left side and hand; "knots" in her joints; difficulty walking after sitting for "awhile" and difficulty walking more than 10 or 15 minutes; fatigue; headaches; slight vertigo; and difficulty holding onto things with her left hand. (R. 246-47, 252-56.) Plaintiff testified that she could "probably walk about 10 or 15 minutes" before her hips and left foot would start hurting and swell up; that she could stand for 15 or 20 minutes; sit for about half an hour; lift 10 pounds but not with her left hand; and stated that she has trouble bending and squatting. (R. 247-48, 251.) Plaintiff testified that she was taking Flexiril, a muscle relaxer; Amitriptyline, an antidepressant;

Lortab for pain; and Neurotonin "for the tingling and everything I get on my left side." (R. 244.)  Plaintiff testified that tries to do household chores, but has to have help from her daughter most of the time with laundry, cooking, cleaning and washing dishes.  (R. 249-50.)  Plaintiff reported that she drives and usually goes grocery shopping once a week.  (R. 249.)  Plaintiff testified that "usually I have to sit down for a few minutes in between doing anything, 15 minutes or so," and that "[i]f I'm feeling really bad, I try to lay down, try to get some rest, usually a half hour.  If I can get to sleep, which is not very often, I'll take a little nap."  (R. 252.)  Plaintiff explained that she has "good days and bad days" and that on a bad day, which occurs about once a week, she will "stay in bed the whole day," and cannot do anything but use the restroom, because "the pain level is very high," the "fatigue is very high;" and the "headaches sometimes are very bad." (R. 252-53.)

## IV. DISCUSSION

Plaintiff raises three issues on appeal.  First, Plaintiff contends that the ALJ committed reversible error in failing to accord adequate weight to the opinions and assessment of Plaintiff's treating physician, Dr. Jones.   Second, Plaintiff argues that the ALJ failed to properly analyze Plaintiff's subjective complaints of pain and fatigue on her ability to work.  Third, Plaintiff contends that the ALJ erred by applying the grids without obtaining vocational expert testimony.

Turning to Plaintiff's first argument, Plaintiff argues that the ALJ failed to provide good cause for his rejection of the opinion of Dr. Jones.  However, the only opinion of Dr. Jones that the ALJ rejected was her determination that Plaintiff was unable to

perform work of any kind.  (R. 142.)[26]  Dr. Jones merely checked a box on a pre-printed form noting that Plaintiff was not able to perform work of any kind.[27]  While a treating physician may state that a claimant is "disabled" or "unable to work" the agency will nonetheless determine disability based on the medical findings and other evidence.[28]  Indeed, the ultimate determination as to whether a claimant is disabled is reserved for the Commissioner.[29]  As such, the ALJ had good cause for discounting Dr. Jones' opinion regarding Plaintiff's ability to work.

Turning now to Plaintiff's second argument that the ALJ failed to properly consider Plaintiff's subjective complaints of pain and fatigue on her ability to work.  The ALJ found that Plaintiff's testimony was not fully credible because it was not consistent with the clinical and laboratory findings and Plaintiff's ability to perform activities of daily living. (R. 16.)

In evaluating disability, the ALJ must consider all of a claimant's impairments, including her subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[30]  The Eleventh Circuit has set forth a three-part test that applies when a

---

[26] The ALJ accepted Dr. Jones' opinion that Plaintiff has fibromyalgia, and found that it was a severe impairment.  (R. 14.)

[27] See Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir. 1993)(finding that "form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); see also, Spencer o/b/o Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)(rejecting a physician's opinion who merely checked boxes on a form without providing any explanations).

[28] Bell v. Bowen, 796 F.2d 1350, (11th Cir. 1990).

[29] See 20 CFR §404.1527(e); Social Security Ruling 96-5p

[30] 20 C.F.R. § 404.1528.

claimant attempts to establish disability through his own testimony of pain or other subjective symptoms.[31] The "pain standard", which applies to complaints of subjective conditions other than pain, requires that the plaintiff first produce medical or other evidence of an underlying medical condition. Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged symptom arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptom.[32]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[33] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[34] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[35] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the

---

[31] Id. at 1560.

[32] Id.

[33] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[34] Foote at 1562-1563.

[35] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

case.[36]  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[37] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[38]

In the instant case, it appears as though the ALJ applied the Eleventh Circuit's pain standard "threshold"[39] assessment to Plaintiff's subjective complaints by noting the Plaintiff's complaints of pain.  (R. 16.)  While the ALJ did not cite the exact language of the standard, he did state that he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and Social Security Ruling 96-7p."  (R. 15.)  This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard.  Moreover, the ALJ cited 20 C.F.R. § 404.1529, which contains the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[40]

---

[36] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[37] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[38] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[39] Marbury, 957 F.2d at 839.

[40] See Wilson, 284 F.3d at 1226.

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing an underlying medical condition, fibromyalgia, that could be expected to give rise to pain and fatigue. Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's complaints regarding her level of pain and fatigue were not fully credible.

In reaching this conclusion, the ALJ broadly stated that "[t]he testimony of the claimant is not fully credible considering the inconsistency of the claimant's allegations with the negative clinical laboratory findings, and with the claimant's ability to perform activities of daily living such as caring for her own hygiene, doing laundry, vacuuming, cooking meals and driving a car." (R. 16.) The error in this finding relates to the ALJ's failure to understand the nature of fibromyalgia.

A diagnosis of fibromyalgia - literally meaning "pain in the muscles and the fibrous connective joints (the ligaments and tendons)" - depends mostly on a person's own reports of symptoms, namely pain.[41] There are no laboratory tests for the "presence or severity of fibromyalgia."[42] Individuals with fibromyalgia face symptoms such as "pain all over," fatigue, disturbed sleep, stiffness, and multiple tender points throughout the body.[43]

Plaintiff testified that she has pain throughout her body, especially her left side and hand; "knots" in her joints; difficulty walking after sitting for "awhile" and difficulty

---

[41] Stewart v. Apfel, 245 F.3d 793 (11th Cir. 2000); see also Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (Judge Posner stated that "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective" and that "[t]here are no laboratory tests for the presence or severity of fibromyalgia.").

[42] Stewart, 245 F.3d at *8 (quoting Sarchet, 78 F.2d at 306.)

[43] Sarchet, 78 F.3d at 306.

walking more than 10 or 15 minutes; fatigue; headaches; slight vertigo; and difficulty holding onto things with her left hand. (R. 246-47, 252-56.) Plaintiff testified that she could "probably walk about 10 or 15 minutes" before her hips and left foot would start hurting and swell up; that she could stand for 15 or 20 minutes; sit for about half an hour; lift 10 pounds but not with her left hand; and stated that she has trouble bending and squatting. (R. 247-48, 251.) Plaintiff testified that she was taking Flexiril, a muscle relaxer; Amitriptyline, an antidepressant; Lortab for pain; and Neurotonin "for the tingling and everything I get on my left side." (R. 244.) Plaintiff explained that she "bad days" about once a week, and she will "stay in bed the whole day," because "the pain level is very high," the "fatigue is very high;" and the "headaches sometimes are very bad." (R. 252-53.)

      While the ALJ cited numerous medical records which he found to be inconsistent with Plaintiff's testimony, the records on closer examination did not disclose medical evidence that is inconsistent with fibromyalgia. For example, the ALJ noted that x-rays revealed no acute bony abnormality of the pelvis, no evident compression of the thoracic spine, no acute bony abnormality or significant degenerative finding of the right hand and no acute bony abnormality or obvious degenerative finding of the left hand, that an MRI of the thoracic spine and brain were largely unremarkable and that a nerve conduction study and EMG were normal. However, as noted above, fibromyalgia by its very nature lacks objective evidence; as such, these objective tests have no bearing on the severity of Plaintiff's symptoms.[44]

---

[44] Stewart v. Apfel, 245 F.3d 793, (11th Cir. 2000); see also Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (Judge Posner stated that "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective" and that "[t]here are no laboratory tests for the presence or severity of

16

The ALJ then noted that Dr. Yancey found that Plaintiff had "mild abdominal tenderness, excellent range of motion throughout the musculoskeletal systems, a normal Faber maneuver, and negative supine and sitting straight leg raises" and "no lower extremity edema, normal strength and no active or chronic synovitis."  (R. 16.) While some of these findings might be relevant to the severity of Plaintiff's pain,[45] the ALJ failed to explain how (if at all) they are inconsistent with Plaintiff's testimony. Moreover, the ALJ failed to mention other portions of Dr. Yancey's records that were consistent with Plaintiff's testimony -- i.e., complaints of pain, fatigue and non-restorative sleep and most notably that Plaintiff had 16/18 myofascial tender points on examination.  The ALJ then noted that Dr. Shetty treated Plaintiff for dizziness and frequent numbness and paresthesias in the left upper extremity and that Dr. Kim found intact muscle strength throughout Plaintiff's body, no gross ataxia[46] and unremarkable gait.  Once again, it is not clear how (if at all) these findings are inconsistent with Plaintiff's testimony of pain.

The ALJ also found that Plaintiff's ability to perform activities of daily living (i.e. caring for her own hygiene, doing laundry, vacuuming, cooking meals and driving a car) were inconsistent with her complaints of pain and fatigue.  However, the ALJ failed to note that Plaintiff requires help from her daughter most of the time with laundry,

---

[44](...continued)
fibromyalgia.").

[45] For example, Dr. Yancey noted the lack of edema, or swelling of Plaintiff's lower extremity. However, swelling of the joints is not a symptom of fibromyalgia and "its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."  Sarchet, 78 F.3d at 307.

[46] Ataxia refers to the incoordination of muscular action.  See 1-A Attorneys' Dictionary of Medicine 3266.

cooking, cleaning and washing dishes (R. 249-50) or that Plaintiff needs to rest for a few minutes between doing activities. (R. 252.)  Moreover, the ALJ did not acknowledge Plaintiff's testimony that she has "bad days" about once a week when she stays in bed the entire day because "the pain level is very high," the "fatigue is very high;" and the "headaches sometimes are very bad." (R. 252-53.)   These limited daily activities are not inconsistent with Plaintiff's complaints of pain and fatigue.

      The ALJ also pointed to a March 2003 vocational evaluation, during which Plaintiff lifted up to 25 pounds, and 15 pounds continuously, balanced adequately on both legs, could adequately walk forward and backward and heel to toe.  (R. 16.)  That Plaintiff was able to balance and walk forward and backward and heel to toe is not inconsistent with her testimony that she can stand for 15 minutes and walk for 10-15 minutes.  Indeed, the only potential inconsistency was Plaintiff's testimony that she could only lift and carry a maximum of 10 pounds.  However, the ALJ failed to note that during the vocational evaluation, Plaintiff only used her right arm for the lifting exercises. This is significant because these results are consistent with Plaintiff's testimony that she has trouble using her left hand due to persistent pain.

      Because the medical evidence of record is consistent and supportive of fibromyalgia, and the evidence relied upon by the ALJ in support of his credibility finding is not necessarily inconsistent with the Plaintiff's subjective complaints of pain and fatigue, the Court finds that the ALJ's credibility finding was not supported by substantial evidence.  On remand, the ALJ should reevaluate Plaintiff's testimony and make an appropriate credibility finding based on substantial evidence.

      Moreover, as a result of his failure to properly analyze Plaintiff's fibromyalgia, the ALJ improperly relied on the grids, without the assistance of vocational expert

testimony. Exclusive reliance on the "grids" is not appropriate when a claimant has nonexertional impairments that significantly limit basic work skills.[47] In this case, vocational testimony was necessary due to the presence of nonexertional limitations including, pain, fatigue and medication side effects. Accordingly, on remand, the ALJ should reconsider, with vocational expert testimony, whether Plaintiff can perform other work which exists in the national economy.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to: (1) evaluate the subjective testimony of the Plaintiff and articulate an adequate credibility finding that is supported by substantial evidence; (2) reconsider, with vocational expert testimony, whether Plaintiff can perform other work which exists in the national economy; and (3) conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on this 3rd day of March, 2006.

Copies to:
All Counsel

GARY R. JONES
United States Magistrate Judge

---

[47] See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(quoting Francis v. Heckler, 749 F.2d 2565, 1566 (11th Cir. 1985.)